# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| WEATHERFORD TECHNOLOGY HOLDINGS, LLC and WEATHERFORD U.S., L.P.<br><br>Plaintiffs,<br><br>v.<br><br>TESCO CORPORATION, TESCO CORPORATION (US), AND TESCO OFFSHORE SERVICES, INC.<br><br>Defendants. | Civil Action No. 2:17-cv-456<br><br>**Jury Trial Requested**<br><br>**REDACTED PUBLIC VERSION** |

## WEATHERFORD'S MOTION TO COMPEL DOCUMENT PRODUCTION AND SUPPLEMENTAL INTERROGATORY RESPONSES

March 21, 2018 was the deadline to complete substantial document production. To date, Tesco has produced *eleven* documents totaling *eighteen* pages. Additionally, Tesco failed to provide sufficient responses to at least five of the ten interrogatories Weatherford served in this case. Pursuant to the Standing Order Regarding "Meet and Confer" Obligations Relating to Discovery Disputes, Weatherford files this motion, requesting the Court order Tesco to, no later than one week of the Court's Order, (1) comply with the Discovery Order, ¶ 3; (2) produce at least the documents identified in Weatherford's Initial Production Request (excerpted at Ex. B); and (3) supplement Tesco's responses to Interrogatory Nos. 1, 2, 3, 5, and 6.

## I.   Introduction

Weatherford filed suit on May 26, 2017, accusing Tesco's Pusher Arm of infringing Weatherford's U.S. Patent No. 7,249,637. Dkt. 1. The asserted claims cover the Pusher Arm itself, methods of using a generic Pusher Arm, methods of using a Pusher Arm equipped with an interlocking system, and methods of using a Pusher Arm equipped with memorized positions.

Tesco uses the Pusher Arm to compete against Weatherford's AutoCLAMP$^{TM}$ in the completions market, serving Oil & Gas operators in the Gulf of Mexico. "Well completion(s)" or "completion(s)" are generic terms that involve the assembly of downhole tubulars and equipment required to enable safe and efficient hydrocarbon production. Weatherford uses the AutoCLAMP (and Tesco uses the Pusher Arm) as part of a larger completions operation for an oil and gas operator. Dkt. No. 27 at 1–3. The invoice for a completion operation is often called a "field ticket," and includes rental fees for the AutoCLAMP/Pusher Arm, as well as fees relating to the other equipment and personnel used in the larger completion operation. In addition to "renting out" the Pusher Arm as part of offering completions operations, Tesco has sold at least six Pusher Arms to third parties. Ex. 1, Baxter Decl. ¶ 2.

Tesco's Pusher Arm is nearly identical to Weatherford's patented AutoCLAMP. Dkt. No. 27 at 2–3. Tesco has used its infringing Pusher Arm to unlawfully take market share away from Weatherford and depress the pricing on completions and related services. *Id.* at 3. Weatherford seeks an injunction, damages, fees, enhanced damages, and a finding of willfulness.

## II. Factual Background of Motion to Compel

### A. Relevant Discovery Deadlines and Requests

The Discovery Order was entered on October 10, 2017. Dkt. No. 22, ¶ 3. The Discovery Order requires Tesco to "produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action." *Id.* Tesco was to produce such documents "[w]ithout awaiting a discovery request." *Id.* The deadline for Tesco's P.R. 3-4 disclosures was November 8, 2017. Patent Rule 3-4(a) requires Tesco to provide "documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality." The deadline to complete substantial document production was March 21, 2018. Dkt. No. 23. In addition to the Court-ordered deadlines, on December 11, 2017, Weatherford served its First Set of Interrogatories and an Initial Production Request that identified 21 categories of relevant documents that Tesco should produce in this case. Baxter Decl. ¶¶ 3, 4; Ex. B.

### B. Tesco's Production, Interrogatory Responses, and Weatherford's Notices

To date, Tesco has produced 11 documents, totaling 18 pages. On November 29, 2017, Tesco produced two documents—four pages of mechanical drawings of the Pusher Arm's base, and a three-page "2014 Product Flyer Update." Baxter Decl. ¶ 5. On January 9, 2018, Tesco reproduced the same four pages of base drawings, along with three new documents containing five pages of drawings of other Pusher Arm components. *Id.* On January 26, 2018, Tesco produced two invoices for the sale of ▮ Pusher Arms, two pictures of what looks to be a Pusher Arm prototype, and two documents taken from Tesco's website—a still from an animation showing the Pusher Arm in operation, which Weatherford cited in its infringement contentions, and the "Tesco True Results" bulletin that Weatherford attached as Exhibit B to its complaint. *Id.*

The Tesco True Results bulletin, which was copyrighted in 2015, states that the Pusher Arm "has been utilized in more than 15 completion operations in the Gulf of Mexico." Tesco did not produce any field tickets associated with the "more than 15 completion operations," any operation manuals describing the technical operation and features of the Pusher Arm, or the cost

2

of the ▮ Pusher Arms that were sold. Prior to the litigation, Tesco's General Counsel stated that Tesco has made ▮ Pusher Arms, ▮ of which were currently located in the United States. *Id.* ¶ 2. Tesco did not produce any information about the ▮ Pusher Arms that Tesco did not sell, but rather uses as part of Tesco's completion operations for its customers. *Id.* ¶ 5.

Tesco served its Interrogatory Responses on January 12, 2018, which relied on Rule 33(d) for responses to Interrogatories 1–3. Baxter Decl. ¶ 4. Tesco stated its view that the Initial Production Request went beyond the Discovery Order and did not further respond to it. *Id.* ¶ 3. Weatherford has notified Tesco that its document production is deficient by sending three emails and two formal letters, and during three telephonic conferences. *Id.* ¶ 6. Tesco's general response is that no further relevant documents exist in this matter. *Id.*

### C. Tesco's Motion to Transfer

On October 10, 2017, Tesco filed a motion to transfer this case to the Southern District of Texas. Dkt. 21. Tesco submitted a signed declaration from its Global Business Manager, Paul Meeks, that declared Tesco conducted "a reasonable investigation" and all relevant documents, "including research and development records, technical documentation, marketing material, and financial information, are stored as either hard copies or on servers and computer systems in Houston, Texas." Dkt. No. 21-1 ¶ 10. Tesco relied on this declaration, in part, to argue that "Tesco's documents will presumably make up the bulk of discovery." Dkt. No. 21 at 7.

## III. Argument

### A. Tesco Has Not Produced the Relevant Documents

#### *(1) Eighteen Pages of Documents is an Implausibly Low Number*

Tesco has only produced 18 pages of documents, two of which are publicly available. Tesco claims there is nothing else to produce. Baxter Decl. ¶ 6. Aside from a few pages of mechanical drawings, no records relate to research, development, or manufacturing of the ▮ (or more) Pusher Arms. *Id.* ¶ 5. Such a low number of documents is implausible on its face.

Tesco is a large and sophisticated international company—as of 2017, it had over 1,000 employees, was listed on the NASDAQ, and was assigned more than 150 patents/patent

3

publications. *Id*. ¶ 7. Tesco necessarily recorded its decision to develop the Pusher Arm. Tesco would not decide to manufacture ▇ custom-made tools without understanding the time and cost involved in producing the tools, along with expected revenue and other benefits. Tesco would have specified the personnel in charge of the project as well as the number of proposed units (otherwise it is still producing Pusher Arms today). Moreover, Tesco would need mechanical drawings to produce the Pusher Arm in the first place (the produced drawings are dated at least one year after Tesco developed the tool). Tesco also would have documents showing its own employees and customers how to install and operate the Pusher Arms—for example, Tesco has not produced any document that specifies the type of fluid and pressure it needs for operation (e.g., air at 100 p.s.i.). Tesco would record financial information, including depreciation and revenue generated from each Pusher Arm, and other metrics to know if offering Pusher Arms is profitable. Tesco would also have maintenance records and certifications of each Pusher Arm, including documents showing when and how to service the tool, its age, remaining life, and its size and weight for installing onto a rig.

By comparison, Weatherford has produced over 2,000 pages, including over 100 documents, which detail the development and operation of its competing AutoCLAMP (in addition to 25,000 pages of documents, including more than 1800 documents, which show the AutoCLAMP's compatibility with other equipment used during completions operations).

### *(2) Known Documents Show that Other Relevant Documents Exist*

The few documents that Tesco has produced contradict Tesco's assertion that there are no additional documents. The "Tesco True Results" marketing bulletin states that the Pusher Arm "was developed in 2014 [and includes] a few key features, such as a safety device to prevent slip closure on the control lines." Dkt. No. 1, Ex. B. Tesco has produced *no* technical documents from 2014—the earliest mechanical drawing is dated ▇. Baxter Decl. ¶ 5. Further, Tesco has provided no document regarding the "few key features." For example, Tesco has not produced documents showing how the Pusher Arm is installed on the rig, how it operates, and whether it interlocks with other rig equipment. The "Tesco True Results" bulletin also states that

the Pusher Arm has made "more than 15 completion operations in the Gulf of Mexico." Dkt. No. 1, Ex. B. Tesco has produced *no* record of *any* completion operation. Baxter Decl. ¶ 5. These financial records are necessary for Weatherford's damages case.

Similarly, the mechanical drawings that Tesco has produced do not match the image in the "Tesco True Results" bulletin. Baxter Decl. ¶ 5. For example, the mechanical drawings are incomplete because no assembly drawing is provided showing how the complete tool is assembled. *Id.* Likewise, the mechanical drawings do not match the images of the prototype Pusher Arm. *Id.*

Additionally, Tesco has not identified the existence of any Pusher Arm aside from one invoice showing the sale of ▉ Pusher Arms in ▉ and a second invoice showing the sale of ▉ Pusher Arms in ▉. *Id.* When Weatherford produced the email from Tesco's General Counsel that stated Tesco had made ▉ Pusher Arms, counsel for Tesco seemed unaware of the existence of the remaining ▉ and surmised that they "apparently [are] in inventory." *Id.* ¶ 6.

### B. Tesco Has Not Provided Sufficient Responses to Weatherford's Interrogatories

Despite producing only 11 documents, Tesco relies on Rule 33(d) for its responses to Interrogatories 1–3. Baxter Decl. ¶ 4. Not surprisingly, Tesco does not comply with the requirement of Rule 33(d) to "specify[]the records that must be reviewed, in sufficient detail"; because the 11 documents do not answer these interrogatories. Instead, Tesco states "[p]ursuant to Fed. R. Civ. P. 33(d), Tesco will produce [documents/invoices] that should be sufficient to answer this Interrogatory," without identifying any document at all. *Id.*

Tesco's responses to Interrogatories 5–6 are likewise deficient. Interrogatory No. 5 requests Tesco to identify any variations among the Pusher Arms that would be relevant to infringement. Baxter Decl. ¶ 4. Tesco responded there were "slight modifications," but would not state whether those modifications are relevant to infringement. *Id*. Weatherford cannot determine the existence of *any* modifications because Tesco has not produced any document that shows a modification. Interrogatory No. 6 requests Tesco "[e]xplain when, how, and why you developed and commercialized the Pusher Arm." *Id.* Tesco responded that the "design was based

on a review of other tools via surfing the Web" and that the Pusher Arm was sold through "pictorial illustration" prior to 2017. *Id*. Tesco refuses to identify which tools were reviewed on the web, or produce the referenced "pictorial illustration." *Id.*

### C. Tesco's Production Contradicts its Sworn Statements from Its Motion to Transfer

Tesco's position that the produced 18 pages contain all the relevant documents contradicts the statements it made in its motion to transfer. In that motion, Tesco submitted a signed declaration that Tesco has documents including "research and development records, technical documentation, marketing material, and financial information, [which] are stored as either hard copies or on servers and computer systems in Houston, Texas." Dkt. No. 21-1, ¶ 10. Under any reasonable reading, the 11 produced documents ***do not*** cover all those categories.

Assuming Tesco's representations in its transfer motion and sworn declaration are accurate, then Tesco did not produce all the relevant documents. Tesco's statements are admissions that Tesco did not comply with Weatherford's discovery requests, Patent Rule 3-4(a), and the Court's Discovery Order. Tesco has no excuse for ignoring these deadlines because Tesco stated that "Tesco diligently conducted" an investigation prior to October 10, 2017 to confirm the location of these documents. Dkt. No. 28 at 4–5 (citing signed declaration of Paul Meeks, Tesco's Global Business Manager). To take Tesco at its word means that Tesco already searched and identified relevant documents that it then intentionally withheld.

On the other hand, assuming that 11 documents (totaling 18 pages) is the entirety of the relevant documents, then Tesco's situation is worse. Tesco has submitted a motion to transfer wherein it knew it only had 11 relevant documents, but claimed that those 11 documents presumably make up the "bulk of discovery" in this case. Dkt. No. 21 at 5–6. In its reply to the motion to transfer, Tesco double-downed on this position and claimed that the "facts clearly show this lawsuit belongs in Houston," based, in part, on these 11 documents, which Tesco characterizes as "including research and development documents, technical documents, marketing material, and financial information." *Id.* To be clear, ***nothing*** Tesco produced can

6

arguably be called "research and development documents." Nor does the production include "financial information" related to ▌ Pusher Arms.

Further, Tesco never explained why it failed to produce these 11 documents in October, 2017, when Tesco allegedly "***diligently conducted***" an investigation to confirm the location of the relevant documents. Dkt. No. 28 at 4–5 (emphasis added); *see also id*. (citing Decl. of Paul Meeks). As noted above, Tesco did not produce all these documents until January 2018—three months after the alleged "diligently conducted" investigation.

### D.  Weatherford Has Been and Continues to Be Prejudiced

It can be impossible to prove a case against a party that refuses to engage in discovery. Even if Tesco complies with this motion tomorrow, Weatherford has lost several months to prepare its case. For example, Tesco has not produced any documents "sufficient to show the operation of any aspects or elements of an Accused Instrumentality" as required by P.R. 3-4(a), complicating the claim construction briefing process. Likewise, Weatherford has not had a fair opportunity to identify e-mail custodians due to Tesco's negligible production. The lack of production has also delayed Weatherford's ability to identify fact deponents and prepare for corporate depositions. This has prevented the parties from "crystaliz[ing] their theories of the case early in litigation," which is "consistent with the purpose of the Local Patent Rules." *O2 Micro Int'l L td. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006).

### IV.  CONCLUSION

For the foregoing reasons, Weatherford requests the Court order Tesco to, no later than one week of the Court's Order, (1) comply with the Discovery Order, ¶ 3; (2) produce at least the documents identified in Weatherford's December 11, 2017 Initial Production Request; (3) supplement Tesco's responses to Interrogatory Nos. 1, 2, 3, 5, and 6 and verify all interrogatory responses; and (4) for any other relief the Court deems just.

Dated: April 12, 2018	Respectfully submitted,

*/s/ J. Boone Baxter*

Leslie V. Payne
TX State Bar No. 00784736
lpayne@hpcllp.com
Douglas R. Wilson
TX State Bar No. 24037719
dwilson@hpcllp.com
J. Boone Baxter
TX State Bar No. 24087150
bbaxter@hpcllp.com

**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby St. Ste. 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 12th Day of April, 2018, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ J. Boone Baxter*

J. Boone Baxter

8

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for the parties have complied with Local Rule CV-7(h). In addition to many conferences by telephone, email and letter, the parties engaged in a lead and local meet and confer call concerning the subject matter of this Motion on April 10, 2018. Counsel present on the April 10, 2018 call included: Leslie Payne, Doug Wilson, Boone Baxter on behalf of Weatherford; Charles Baker, Steve Boyd, and Dan Ngyuen on behalf of Tesco. Tesco confirmed its position that there are no more relevant documents to produce, leaving the parties at an impasse.

*/s/ Leslie V. Payne*
Leslie V. Payne