# Exhibit B

- The terms "document" and "documents" are used in the broadest sense allowed by Federal Rule of Civil Procedure 34(a).
- The terms "Tesco," "you," or "your" mean Tesco Corporation, Tesco Corporation (US), and Tesco Offshore Services, Inc., as well as any parent company owning all or part of Tesco, including Nabors Industries Ltd. or any other Nabors-related entity, and: (1) any current or former Tesco subsidiary (either wholly or partly-owned), subcontractor, division, branch, or department; (2) any entity under the control of Tesco; (3) any proprietorship, joint venture, partnership, or other business cooperation involving Tesco; (4) all Tesco predecessors-in-interest, representatives, successors-in-interest; (5) the present and former directors, officers, accountants, affiliates, attorneys, agents, employees, in house and outside counsel, or other persons under the control of Tesco, regardless of their affiliation or employment; and (6) any other person acting or purporting to act on behalf of Tesco.
- The term "Pusher Arm" means the tool Tesco markets as either the "Control Line Pusher Arm" or the "Pusher Arm," and all versions thereof.
- The term "Frank's Cobra tools" means the tools Frank's International, LLC markets as either the Cobra Control Line Manipulator Arm and all versions thereof, or the Cantilever Cobra Control Line Manipulator Arm and all versions thereof.
- The term "invoice" means record(s) of proposed or actual sales or leases, and includes field tickets, job tickets, tickets, receipts, or similar documents, regardless of whether it was for products sold or leased, or for services performed.
- The term "completion services" means the events and equipment necessary to bring a wellbore into production once drilling operations have been concluded, including but not limited to the assembly of downhole tubulars and equipment required to enable safe and efficient production from an oil or gas well.
- The term "well" means both individual wells, whether drilled or anticipated to be drilled, as well as projects consisting of multiple drilled or anticipated wells.

## Documents Requested

1. Documents sufficient to show the features and operation of the Pusher Arm, including mechanical dimensions and relationship of the various components.
2. Documents sufficient to show, for each Pusher Arm manufactured worldwide, the date and location of manufacture, serial number, customer, and dates of lease and date of sale (whether the sale was internal or external), and current location of each Pusher Arm.
3. Documents sufficient to show all sales and leases of all Pusher Arms, whether internal sales within Tesco, external leases to third-parties, or external sales to third-parties, including for each sale or lease, the date of sale and sale price or the date of lease and lease price, and the customer. The documents should include the entire invoice and all related invoices to the extent the Pusher Arm comprises only a portion of the larger transaction or related set of transactions.
4. Documents sufficient to show the complete job history of every Pusher Arm that Tesco has manufactured, possessed, owned, used, or otherwise controlled. The job history

should include the date of service, customer, and full well identification (including name, API number, block, country, state, county, field, rig/platform, driller, and operator).

5. Every invoice in which any Pusher Arm was used, sold, rented, leased, or made available for use. The documents should include the entire invoice and all related invoices to the extent the Pusher Arm comprises only a portion of the larger transaction or related set of transactions.
6. For each well or job where a Pusher Arm was used or made available for use, invoices for other Tesco services or products associated with that well or job.
7. For all invoices identified in numbers 5 or 6, on a quarter-by-quarter basis to the present, disclose the following financial data: (a) revenues net of all returns, allowances, or credits; (b) costs associated with the manufacture and distribution of the goods and services; (c) all other associated expenses, with the data segregated by whatever classifications are made in the normal course of business; (d) profits before taxes net of any returns, allowances, or credits.
8. Documents sufficient to show all quotes, bids, sales proposals or offers where a Pusher Arm was made available or offered for use, lease, or sale. The documents should include the related quotes, bids, proposals, or offers to the extent the Pusher Arm comprises only a portion of the larger transaction or related set of transactions.
9. All marketing materials for the Pusher Arm.
10. All patent licenses relating to oilfield completion services or tools that Tesco is a party to.
11. Documents sufficient to show any commitment, plan, or option for Tesco to manufacture additional Pusher Arms.
12. Documents sufficient to show any commitment, plan, or option for Tesco to sell or lease additional Pusher Arms to third-parties.
13. All documents regarding U.S. Patent No. 7,249,637.
14. All documents relating to the Pusher Arm's design, development, and testing, including documents describing the motivation for developing and manufacturing the Pusher Arm.
15. All documents relating to Weatherford's AutoCLAMP or Frank's Cobra tools and all analyses or studies concerning Weatherford as a competitor.
16. All documents authored, received, or reviewed by Nick Mawford that relate to the Pusher Arm.
17. All documents relating to any patent search, patentability analysis, freedom to operate analysis, or any other assessment or evaluation of patents relating to or patentability of the Pusher Arm, including any written opinions of counsel relating to U.S. Patent No. 7,249,637.
18. All documents relating to any patent applications filed by Tesco related to the Pusher Arm or similar devices.
19. All customer feedback or communications concerning the Pusher Arm, or the need for such a device.
20. All documents analyzing or comparing the Pusher Arm, Weatherford's AutoCLAMP or Frank's Cobra Tool to each other or to any other device in the market.
21. All communications between Tesco and any Nabors-related entity relating to the Pusher Arm or any jobs/activities in which the Pusher Arm can be used.