**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| WEATHERFORD TECHNOLOGY HOLDINGS, LLC, and WEATHERFORD U.S., L.P. | § § § | |
| | § | |
| *Plaintiff*, | § | CASE NO. 2:17-CV-456 |
| | § | |
| v. | § | |
| | § | |
| TESCO CORPORATION, TESCO CORPORATION (US), and TESCO OFFSHORE SERVICES, INC. | § § § | |
| | § | |
| *Defendants.* | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the opening claim construction brief of Plaintiffs Weatherford Technology Holdings, LLC and Weatherford U.S., LP (collectively "Plaintiff") (Dkt. No. 34, refiled with corrections as Dkt. No. 37, filed on March 21, 2018 and April 3, 2018, respectively), the response of Defendants Tesco Corporation, Tesco Corporation (US), and Tesco Offshore Services, Inc. (collectively "Defendant") (Dkt. No. 38, filed on April 4, 2018), and the reply of Plaintiff (Dkt. No. 39, filed on April 11, 2018). The Court held a claim construction hearing on May 30, 2018 (*see* Dkt. No. 56). Having considered the arguments and evidence presented by the parties at the hearing and in their claim construction briefing, the Court issues this Claim Construction Order.

**Table of Contents**

I. BACKGROUND ................................................................................................ 3

II. LEGAL PRINCIPLES ...................................................................................... 4

III. CONSTRUCTION OF AGREED TERMS ..................................................... 9

IV. CONSTRUCTION OF DISPUTED TERMS ................................................ 10

   A. "mounting assembly" ................................................................................ 10

   B. "angle relative" terms ............................................................................... 15

   C. "a movement of the control line…" ........................................................ 20

   D. "operatively mounted" ............................................................................. 25

   E. "a remotely controllable head" ................................................................ 28

   F. "memorizing the position of the head" ................................................... 34

V. CONCLUSION ............................................................................................... 38

# I. BACKGROUND

Plaintiff brings suit alleging infringement of United States Patent No. 7,249,637 ("the '637 patent") by the Defendant.

The application leading to the '637 patent was filed on January 18, 2005 and issued on July 31, 2007. The '637 patent is entitled "Method and Device to Clamp Control Lines to Tubulars." In general, the '637 patent is directed to a method and device for connecting control lines to a tubular string. The Abstract of the '637 patent states:

> The inventions relates to an apparatus for connecting a control line to a tubular string. In one embodiment, the apparatus includes a guide boom pivotable around a location adjacent the string and with a guide member at an end thereof to guide the control line. The apparatus further includes a clamp boom that is independently pivotable and includes a clamp housing at an end thereof for clamping the control line against the tubular string. The guide boom and the clamp boom each have a center line which is substantially aligned with the center line of the tubing string permitting the control line to be aligned adjacent the tubular string prior to clamping.

Independent claims 1, 17, and 34 of the '637 patent are reproduced below:

1. A control line positioning apparatus comprising:

a control line holding assembly movable between a staging position and a clamping position;

a mounting assembly for connecting the control line holding assembly to a rig structure, the rig structure having a rig floor and the mounting assembly located substantially adjacent the rig floor;

a motive member for moving the control line holding assembly between the staging position and the clamping position; and

an arm for connecting the control line holding assembly to the mounting assembly, wherein the arm extends at an angle relative to the rig floor when the control line holding assembly is in the clamping position.

17. A method of operating a control line positioning apparatus comprising:

moving a control line holding assembly from a staging position to a clamping position, wherein the control line holding assembly is operatively mounted proximate a floor of a rig with a mounting assembly;

holding a control line adjacent a tubular string with the control line holding assembly;

securing the control line to the tubular string; and

relocating the control line holding assembly away from the tubular string.


34. A method of aligning a control line with a tubular, comprising:

positioning a control line using a remotely controllable head;

determining a position of the head, wherein the position of the head aligns a first portion of the control line with a tubular string;

memorizing the position of the head; and

positioning a second portion of the control line using the memorized position.


## II. LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

"In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (citation omitted). "In cases where those

subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*,

the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314–17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the United States Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319–24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321.

*Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323–25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120.

## III. CONSTRUCTION OF AGREED TERMS

The parties have agreed to the following meanings for the following terms, an agreement that was confirmed by the parties at the claim construction hearing on May 30, 2018. *See also* Dkt. No. 33 (Joint Claim Construction Chart); Dkt. No. 37 at 3 (Plaintiff's Opening Brief).[1]

| TERM | AGREED CONSTRUCTION |
|---|---|
| "staging position" (claims 1, 17) | Plain and Ordinary Meaning |
| "clamping position" (claim 1) | Plain and Ordinary Meaning |
| "connected" / "connecting" (claims 1, 3, 18) | Plain and Ordinary Meaning |
| "moving a control line holding assembly from a staging position to a clamping position" (claim 17) | Plain and Ordinary Meaning |
| "determining a position of the head, wherein the position of the head aligns a first portion of the control line with a tubular string" (claim 34) | Plain and Ordinary Meaning |
| "sensing an operative condition" (claims 25, 27) | Plain and Ordinary Meaning |
| "automatic feedback of the sensed operative condition" (claims 26, 28) | Plain and Ordinary Meaning |

Accordingly, the Court adopts the constructions agreed to by the parties as listed above.

---

[1] At the claim construction hearing, Defendant also agreed to abandon its indefiniteness challenges to the terms "sensing an operative condition" and "automatic feedback of the sensed operative condition."

## IV. CONSTRUCTION OF DISPUTED TERMS

The parties' positions and the Court's analysis as to the disputed terms are presented below.

### A. "mounting assembly"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "base to be fixed to a rig" | Governed by 35 U.S.C. 112 ¶ 6<br><br>**Claimed Function:** "connecting the control line holding assembly to a rig structure"<br><br>**Claimed Structure**: "an arrangement of four pins joining a base to the outer flange of a platform table as shown by base 210 in Fig. 1, and equivalents."<br><br>Alternatively, plain and ordinary meaning |

The disputed term "mounting assembly" appears in claims 1, 3, 17, and 18 of the '637 Patent.

### (1) The Parties' Positions

Plaintiff argues that the claim language, specification, and prosecution history supports its proposed construction. *See, e.g.*, Dkt. No. 37, Plaintiff's Opening Claim Construction Brief, at pages 4-6. Plaintiff argues that the specification clearly shows a base is connected to a platform table by a "fixing means." *Id.* at 5. Plaintiff argues that this is consistent with the claims requiring the mounting assembly to be "connected to" a rig structure. *Id.* at 4. Plaintiff also argues that the Notice of Allowance found that a "mounting assembly" was not present in a particular cited prior art reference, and then discusses the prior art reference and argues that because it does not allegedly disclose a base fixed to a rig, then the mounting assembly of the claims must necessarily be limited to "fixed." *Id.* at 6. Plaintiff also argues that various dictionary definitions support its proposed construction. *Id.*

Defendant argues that Plaintiff impermissibly attempts to read limitations into the claims from the specification. *See, e.g.*, Dkt. No. 38, Defendant's Responsive Claim Construction Brief, at page 2. Defendant argues that because "mounting assembly" is a nonce word, the term should be construed under 35 U.S.C. 112 (6), and proposes a function and corresponding structure. *Id.* In the alternative, Defendant argues for a plain and ordinary meaning, as nothing in the claims or specification change the ordinary meaning of "mounting assembly" nor do they specifically limit it to being "fixed." *Id.* at 2-3. Defendant argues that "fixed" is only an embodiment in the specification and does not limit the claims unless expressly required. *Id.* Defendant also argues that Plaintiff's reliance on the prosecution history is not persuasive and the citations to dictionary definitions are cherry-picked. *Id.* at 3-4.

In its Reply, Plaintiff argues that the "mounting assembly" term is not a nonce word, the claim does not use "means," and Defendant has not rebutted the presumption that the claim is not a means-plus-function limitation. *See, e.g.*, Dkt. No. 39, Plaintiff's Reply Claim Construction Brief, at pages 1-3. Plaintiff argues that Defendant never states what the plain and ordinary meaning is. *Id.* at 3. Plaintiff argues that it is not importing a limitation from the specification, but is rather reading the claims in view of the specification. *Id.* at 4.

### (2) Analysis

A first issue as to this term is whether it is a means-plus-function limitation. A second issue as to this term is whether any construction is needed or whether the simple plain and ordinary meaning will suffice.

The term "mounting assembly" appears in independent claims 1 and 17, reproduced in relevant part below:

[claim 1]    a **mounting assembly** for connecting the control line holding assembly to a rig structure, the rig structure having a rig floor and the mounting assembly located substantially adjacent the rig floor; … an arm for connecting the control line holding assembly to the **mounting assembly**, …

[claim 17]    moving a control line holding assembly from a staging position to a clamping position, wherein the control line holding assembly is **operatively mounted** proximate a floor of a rig with a **mounting assembly**;

(emphasis added).

It is well settled that a claim limitation that actually uses the word "means" invokes a rebuttable presumption that § 112, ¶ 6 applies. *See*, *e.g.*, *Williamson*, 792 F.3d at 1349. It is also equally understood that a claim term that does not use "means" will trigger the rebuttable presumption that § 112, ¶ 6 does not apply. *Id.* The presumption against the application of § 112, ¶ 6 may be overcome if a party can "demonstrate[] that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (*quoting Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

Here, the disputed term does not recite the word "means." Neither claim 1 nor 17 use the word "means." Therefore, there is a rebuttable presumption that § 112, ¶ 6 does not apply. Here, Defendant has failed to rebut the presumption because "the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1348. The Court finds that the term "mount" has a reasonably well-understood structural meaning. The fact that the simple term "mount" or "mounting" may cover a broad class of structures does not mean that it does not have structure. Nothing in the specification indicates that the term "mount" or "mounting assembly" is a means-plus-function limitation. In contrast, the specification uses the word "fixing <u>means</u>" (col. 3, l. 49), which indicates that the patentee knew how to use the word "means" to specify a means-plus-function

limitation when desired. Further, the use of the "mounting assembly" term in the claims confirms that it is not a means-plus-function limitation. For example, independent claim 17 recites no functional language and refers to a "mounting assembly" in a manner than connotes sufficiently definite structure. Likewise, independent claim 1 requires an arm to be connected to the mounting assembly and that the mounting assembly is located substantially adjacent the rig floor, which provides sufficiently definite structure to the "mounting assembly" term.

On balance, the Court finds that Defendant has failed to rebut the presumption. Thus, the term is a not means-plus-function limitation governed by 35 U.S.C § 112, ¶ 6. This finding is further confirmed by Defendant's alternative construction, which effectively adopts a plain and ordinary meaning approach for the disputed term, as well as its proposal of simply "base" during the claim construction hearing.

The specification has numerous references to the "mounting" term. For example, in a discussion of the prior art, the specification mentions that a prior art device must telescope from its out of the way "mounting" location to the well center. Col. 2, ll. 24-26. The specification further states that the guide boom has a pair of rollers "mounted" therein, that the clamp boom may be "mounted" substantially parallel to the guide boom, that a proximity sensor may be "mounted" in the control line holding assembly, that a clamp boom may be "mounted" between the first and second booms and the guide boom, and that the overall assembly can be "mounted" at various locations relative to the rig structure. *See, e.g.*, col. 3, l. 65; col. 4, l. 16; col. 5, l. 49; col. 6, l. 31; col. 8, ll. 7-13. Of particular relevance to the current dispute and that portion of the specification the Plaintiff relies upon, the specification mentions that a "guide boom 200 is mounted on a base 210 or mounting assembly at a pivot point 205," and that by using a "fixing means," the base is "fixed" relative to the table, thereby permitting the guide boom to be "fixed"

relative to the tubular string and that preferably the guide boom is "fixed" relatively proximate to the tubular string or well center. *See, e.g.*, col. 3, ll. 39-53.

The court finds that the specification refers to a "mounting assembly" as a "base." *See, e.g.*, col. 3, ll. 41-43. Indeed, the sole reference to "mounting assembly" is in relation to base 210. *Id.* The specification never states that the "mounting assembly" has to be fixed. While a base <u>may be</u> fixed to the platform table, nothing inherent in the "mounting assembly" term itself <u>requires</u> the base to be necessarily "fixed." Indeed, the "fixing means" is a separate concept and/or device than the "mounting assembly" term and confirms the broader definition of the "mounting" assembly term. For example, the "fixing means" is the device that actually fixes the base to the table and is not part of the "base" or "mounting assembly" term itself. *See, e.g.*, col. 3, ll. 49-53. In other words, while a "mounting assembly" or base may be fixed to the rig structure, it does not have to be "fixed," and how the mounting assembly or base is implemented or attached to the separate component is a different issue as to what is a "mounting assembly."

Further, nothing in the claim language requires the "fixed" limitation as proposed by Plaintiff. For example, independent claim 1 only requires the mounting assembly to be "connected" (to which the parties agree has its plain and ordinary meaning) to the rig structure and the control line holding assembly and be "located substantially adjacent the rig floor." Had the patentee wanted to limit the claim to a "fixing means" or require the mounting assembly to otherwise be "fixed" to the rig, then it could have easily done so as it did in the specification.

Accordingly, the Court rejects Plaintiff's construction that the base or mounting assembly is a structure "to be fixed to a rig." While the Defendant never provides any example or meaning to its "plain and ordinary meaning" construction, during the claim construction hearing the Defendant agreed that "mounting assembly" is a "base."

The Court hereby construes the term "**mounting assembly**" to mean "**base**."

## B. "angle relative" terms

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "the arm extends at an angle relative to the rig floor" / "an arm that extends at an angle relative to the rig floor"<br><br>(claims 1, 18, 35) | "the arm extends along a line that diverges from the plane of the rig floor (i.e., the arm is not parallel to the rig floor)" | Plain and ordinary meaning<br><br>Alternatively, "the guide boom extends at a relative angle to the rig floor" |
| "angle relative"<br><br>(claims 2, 36) | See above construction | See above construction |

The disputed "angle relative" terms appear in independent claims 1, 18, and 35 and dependent claims 2 and 36 of the '637 Patent.

## (1) The Parties' Positions

Plaintiff argues that the claim language, specification, and extrinsic evidence supports its proposed construction. *See, e.g.*, Dkt. No. 37, Plaintiff's Opening Claim Construction Brief, at pages 7-9. Plaintiff argues that by requiring an angle relative to the rig floor, the claimed arm cannot be parallel to the rig floor; if the arm were parallel to the rig floor, there would be no "angle relative" because the arm and the rig floor would not form an angle at all. *Id.* at 7-8. Plaintiff argues that the claimed "angle" excludes systems where the arm is parallel to the rig floor. *Id.* Plaintiff argues that the dictionary definition of "angle" supports its construction. *Id.* at 8-9. Plaintiff also points to extrinsic evidence to show that a different patent cited the '637 Patent and distinguished the '637 Patent by stating that the arm motion moves at an angle and does not move in a plane parallel to the rig floor. *Id.* at 9.

Defendant argues that the term is clear and Plaintiff provides no justification for the proposed negative limitation. *See, e.g.*, Dkt. No. 38, Defendant's Responsive Claim Construction Brief, at page 4. Defendant argues that while the specification teaches that the guide boom "typically" extends at an angle to the base, it does not require that the boom necessarily extend at an angle. *Id.* at 4.

In its Reply, Plaintiff argues that the plain meaning of "at an angle relative to the rig floor" necessarily means "not parallel to the rig floor;" if the arm moved parallel to the rig floor, there would be no "angle." *See, e.g.*, Dkt. No. 39, Plaintiff's Reply Claim Construction Brief, at pages 4-5. Plaintiff argues that the claim specifically requires an "angle," and thus the arm must necessarily extend at an angle to the rig floor. *Id.* at 5.

### (2) Analysis

The parties dispute whether any construction is needed or whether the simple plain and ordinary meaning will suffice. The primary dispute is whether the relative "angle" of the arm can be extended parallel to the rig floor or must be extended at some angle greater than 0 degrees (i.e., not parallel to the rig floor). The Defendant never provided any example or meaning to its "plain and ordinary meaning" construction. A secondary dispute is whether the arm necessarily means a "guide boom" (proposed by Defendant).

The disputed "angle relative" term appears in independent claims 1, 18, and 35. Claim 1 is reproduced below in relevant part:

> an arm for connecting the control line holding assembly to the mounting assembly, wherein **the arm extends at an angle relative to the rig floor** when the control line holding assembly is in the clamping position

(emphasis added). The claim language is straightforward. The claim specifies that the arm connects the control line holding assembly to the mounting assembly, and that in the "clamping

position" the arm "extends at an angle relative to the rig floor." The parties agree that the "clamping position" term has its plain and ordinary meaning. *See, e.g.*, Dkt. No. 33 (Joint Claim Construction Chart); Dkt. No. 37 at 3 (Plaintiff's Opening Brief).

On its face, the claim terms are easily understood by a juror and do not need construction. The parties' primary dispute seems to be the term "angle." The term "angle" as used in the claims is consistent with the plain meaning of "angle," which is (in general) the space within two lines or planes diverging from a common point or line. As used in the claims, the plain meaning of the claimed phrase requires some type of angle (i.e. greater than zero degrees) and implies that the arm is not parallel to the rig floor. This meaning is confirmed by the dependent claims, which require that the angle is at least 30 degrees or 45 degrees. *See, e.g.*, claims 2 and 36, respectively.

The specification is consistent with the ordinary meaning of the term:

> The assembly 100 includes a **guide boom 200 or arm**, which in one embodiment is a telescopic member made up of an upper 201 and a lower 202 boom. Guide boom 200 is mounted on a base 210 or mounting assembly at a pivot point 205. Typically, **the guide boom 200 extends at an angle relative to the base 210, such as an angle greater than 30 degrees.**

(emphasis added)(col. 3, ll. 39-45). The specification gives an example of a guide boom as being an arm. The specification also provides that the angle relative to the base may be greater than 30 degrees. Comparing Figures 1 and 2 of the patent-in-suit, the guide boom / arm 200 clearly moves between a staging position and a clamping position, and in the clamping position the arm clearly has an angle with respect to the rig floor. Further, the specification and figures do not describe an angle of the arm that is generally parallel to the rig floor or an angle relative to the rig floor. Nor has Defendant pointed to anything in the intrinsic record that supports its position.

In effect, Defendant argues that an angle relative to the rig floor can include an angle of zero degrees (i.e. the arm may be parallel to the rig floor). The Court rejects Defendant's position

as being contrary to the plain meaning of the "angle" term and inconsistent with the intrinsic record. While the Court agrees with Plaintiff that the characterization of the patent-in-suit as found in the prosecution history of unrelated U.S. Patent No 7,216,716 (in which a third party argued that the patent-in-suit has no teaching or disclosure of arm movement in a horizontal plane and/or parallel to the rig floor) generally supports Plaintiff's arguments, see generally Plaintiff's Opening Claim Construction Brief at page 9, that finding is not determinative as to the Court's construction on this term and is not directly relevant to the claim limitations in dispute.

As to the parties' second dispute, the Court finds that there is no basis in the claims for substituting "guide boom" for the "arm" term as proposed by Defendant. The claims clearly recite "arm" and not "guide boom." While there is some relation and/or overlap in the specification between a "guide boom" and an "arm" (*see, e.g.*, col. 3, ll. 39-41), the claim recites "arm" and there is no reason to re-write the claims based on a limitation from the preferred embodiment. The Federal Circuit has consistently held that "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water*, 381 F.3d at 1117. Even where a patent describes only a single embodiment, absent a "clear intention to limit the claim scope," it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification. *Id.*; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing numerous cases rejecting the contention that the claims of the patent must be construed as being limited to the single embodiment disclosed and stating that claims are to be given their broadest meaning unless there is a clear disclaimer or disavowal); *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1988) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally

be read into the claims."); *Phillips*, 415 F.3d at 1323.    Accordingly, the Court rejects Defendant's substitute of the term "guide boom" for "arm."

Overall, the Court believes that a plain and ordinary meaning is most appropriate for this disputed term and no special definition for "angle" or the disputed term is necessary.  However, because that construction may not resolve the dispute between the parties, on balance the Court finds that a construction may be helpful in this instance.  While the Court finds that the phrase "the arm is not parallel to the rig floor" as proposed by Plaintiff to be an accurate example of what is meant by the claimed "angle," the Court finds that the inclusion of this negative limitation in the term's construction is not necessary.  Instead, as admitted by even Defendant during the claim construction hearing, the term "angle" normally means "greater than zero degrees."  For this dispute, nothing else is needed to clarify what is meant by "angle."   Because this resolves the dispute between the parties, the Court finds that no other terms within the disputed phrase requires further construction.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.") (*citing U.S. Surgical*, 103 F.3d at 1568).  Further, the Court finds that the "angle relative" term recited in dependent claims 2 and 36 does not need a separate construction based on the Court's findings herein.

The Court hereby construes "**the arm extends at an angle relative to the rig floor**" to mean "**the arm extends at an angle greater than zero degrees relative to the rig floor.**"

### C. "a movement of the control line…"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "the control line holding assembly pivots about a pivot point forming a curve that substantially intersects a vertical center line of a tubular string" | Plain and ordinary meaning |

The disputed term "a movement of the control line holding assembly describes an arc that substantially intersects with a center line of a tubular string" appears in claim 14 of the '637 Patent.

#### (1) The Parties' Positions

Plaintiff argues that the claim language, specification, and extrinsic evidence supports its proposed construction. *See, e.g.*, Dkt. No. 37, Plaintiff's Opening Claim Construction Brief, at pages 10-11. Plaintiff argues that the specification describes a guide boom that moves in an arc around a pivot point. *Id.* By moving around a pivot point, the control line holding assembly forms a curve. *Id.* at 11. Plaintiff also argues that the specification clearly describes that the vertical center line of the guide boom is substantially aligned with the vertical center line of the tubular string." *Id.* Plaintiff also argues that the dictionary definition of an "arc" supports its proposed construction. *Id.*

Defendant argues that Plaintiff wants to re-write the claims to include limitations that are not found in the claim. *See, e.g.*, Dkt. No. 38, Defendant's Responsive Claim Construction Brief, at page 5. Defendant argues that all the claim requires is that the control line holding assembly "describe an arc" as it moves—it moves in an arc. *Id.* Defendant argues that there is nothing ambiguous or unclear about this limitation that calls for further clarification. *Id.* Defendant further argues that the claim does not require that the movement be the result of mechanically pivoting

around a pivot point. *Id.* Defendant argues that Plaintiff's construction impermissibly reads in limitations from the specification. *Id.*

In its Reply, Plaintiff argues that, regardless of whether the term means "moves in an arc" or "forms a curve," the important point is that the control line holding assembly does not move in a plane parallel to the rig floor. *See, e.g.*, Dkt. No. 39, Plaintiff's Reply Claim Construction Brief, at pages 5-6. Plaintiff argues that because independent claim 1 requires the arm extend at an angle, then the arc limitation of claim 14 necessarily requires pivoting around a pivot point. *Id.* at 6. Plaintiff also argues that by pivoting around a pivot point, the claim must substantially intersect a "vertical" center line of a tubular string. *Id.*

### (2) Analysis

The parties dispute whether any construction is needed or whether the simple plain and ordinary meaning will suffice. More particularly, Plaintiff argues that there are three separate, underlying disputes related to the term: (1) arc, (2) center line, and (3) pivot point. Defendant never provides any example or meaning to its "plain and ordinary meaning" construction.

The disputed "movement …" term appears in claim 14. Claim 14 is reproduced below:

The apparatus of claim 1, wherein **a movement of the control line holding assembly describes an arc that substantially intersects with a center line of a tubular string**.

(emphasis added). Claim 1 requires that the "control line holding assembly" is moveable between a "staging position" and a "clamping position" and has an "arm" that "extends at an angle relative to the rig floor" while in the "clamping position." Claim 14 specifies that the movement of the control line holding assembly is in an "arc" and that the arc substantially intersects with a "center line" of a tubular string. On its face, the claim terms are easily understood by a juror and do not need construction. The terms "arc" and "center line" are used consistent with their plain and

ordinary meanings.  The movement of the control line holding assembly must simply be in the form of an "arc" that substantially intersects with a center line of the tubular string.  Based on the claim language itself, there is no requirement that the movement of the control line holding assembly pivots or pivots around a pivot point.

The specification is consistent with the ordinary meaning of the terms.  For example, the specification has repeated references to the "arcuate" motion of the guide boom / arm.  *See, e.g.*, col. 3, ll. 45-47; col. 4, ll. 55-58; col. 5, ll. 20-23; col. 6, ll. 21-23; col. 6, ll. 46-49; col. 7, ll. 16-18.  The term "arcuate" as used in the specification is consistent with its ordinary meaning.  In some of these "arcuate" references, the specification also references moving the guide boom / arm in an arcuate motion around a "pivot point."  *See, e.g.*, col. 3, ll. 45-47; col. 4, ll. 55-58; col. 6, ll. 21-23.  The specification also has repeated references to the "center line" of the tubing string and the booms:

> The guide boom and the clamp boom each have a **center line** which is substantially aligned with the **center line** of the tubing string permitting the control line to be aligned adjacent the tubular string prior to clamping.
>
> In this fashion, the **vertical center line** of the guide boom 200 is substantially aligned with the **vertical center line** of the tubular string 105, ensuring that as the guide boom 200 pivots around the pivot point 205 to approach the tubular string 105 (see FIG. 2) and subsequently causing the path of the boom 200 and the tubular string 105 to reliably intersect.

(*See, e.g.*, Abstract; col. 3, ll. 53-59.)  It is clear from the specification that the center line of the booms and the tubular string is the "vertical" center line, and no other "center line" is mentioned in the specification.

Regarding the first dispute, based on the intrinsic record, the Court finds that the "arc" term has no meaning other than its plain and ordinary meaning.  Further, there seems to be no genuine dispute as to this term, and the Plaintiff even suggests that there is no difference between "moves

in an arc" or "forms a curve." *See* Plaintiff's Reply Brief at pages 5-6. The Court is not convinced that substituting one set of well-known words for another set of well-known words is helpful or warranted. Accordingly, the Court finds that the "arc" term has its plain and ordinary meaning.

Regarding the second dispute, based on the intrinsic record, the Court finds that the "center line" term clearly is referencing the "vertical" center line. There is no other center line used in the intrinsic record, and based on the surrounding claim language and limitations found in claim 1, there is no doubt that the claimed center line is a "vertical" center line. The parties do not appear to dispute this matter. Accordingly, the Court is not convinced that a more limiting construction is necessary for this term, or that a construction is needed at all.

Regarding the third dispute, the Court is not convinced that a "pivot" limitation and a "pivot point" limitation is a necessary limitation to this disputed term. While the claim expressly mentions an "arc," the claim never mentions a "pivot point" or "pivoting" motion. While one embodiment of the specification mentions moving in an "arcuate" pattern around a pivot point, the Court is not convinced that a pivot point limitation is necessary for the claim or for the "arc" limitation. In other words, the Court finds that moving in a "curved" motion may or may not require moving about a pivot point. The Court finds that the examples in the specification are non-limiting embodiments of the invention that should not be imported into the claims. Simply put, had the patentee wanted to limit the claims to a pivot point, it could have easily done so. The Federal Circuit has consistently held that "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water,* 381 F.3d at 1117. Even where a patent describes only a single embodiment, absent a "clear intention to limit the claim scope," it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification. *Id.*; *see also Liebel-Flarsheim Co. v. Medrad,*

*Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing numerous cases rejecting the contention that the claims of the patent must be construed as being limited to the single embodiment disclosed and stating that claims are to be given their broadest meaning unless there is a clear disclaimer or disavowal); *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1988) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."); *Phillips*, 415 F.3d at 1323.

On balance, the Court finds that a plain and ordinary meaning construction for this disputed term is consistent with the intrinsic record and the Court will not substitute one set of commonly understood terms with another set of commonly understood terms when a plain and ordinary meaning construction is sufficient. Because this resolves the dispute between the parties, the Court finds that no other terms within the disputed phrase requires further construction. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.") (*citing U.S. Surgical*, 103 F.3d at 1568).

The Court hereby construes "**a movement of the control line holding assembly describes an arc that substantially intersects with a center line of a tubular string**" to have its **plain and ordinary meaning**.

### D. "operatively mounted"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "fixed" | Plain and ordinary meaning |

The disputed term "operatively mounted" appears in claim 17 of the '637 Patent.

### (1) The Parties' Positions

Plaintiff argues that the claim language, specification, and extrinsic evidence supports its proposed construction. *See, e.g.*, Dkt. No. 37, Plaintiff's Opening Claim Construction Brief, at pages 12-13. Plaintiff argues that the base is described as the mounting assembly in the specification, and the base is fixed relative to the table by a "fixing means." *Id.* at 12. Plaintiff argues that the only way that the control line positioning apparatus can be mounted to the structure in the described alternative embodiment is by being "fixed." *Id.* at 12-13. Plaintiff also argues that the dictionary definitions of "mounted" support its proposed construction of "fixed." *Id.* at 13.

Defendant argues that Plaintiff again relies on limitations from the specification instead of the claim itself. *See, e.g.*, Dkt. No. 38, Defendant's Responsive Claim Construction Brief, at pages 5-6. Defendant argues that the term is readily apparent. *Id.* Defendant argues that the cited figure relied upon by the Plaintiff is not from the patent-in-suit but in an unrelated patent. *Id.* at 6.

In its Reply, Plaintiff argues that Defendant fails to provide any meaning to the term. *See, e.g.*, Dkt. No. 39, Plaintiff's Reply Claim Construction Brief, at page 7. Plaintiff argues that Defendant provides no reason why "fixed" is incorrect. *Id.* Plaintiff argues that Defendant implicitly argues that the limitation is met when the device simply touches a rig floor. *Id.*

### (2) Analysis

Plaintiff argues that the term is limited to "fixed," while Defendant argues that the term is not so limited and instead has a plain and ordinary meaning. Defendant never provides any example or meaning to its "plain and ordinary meaning" construction, and instead stated during the claim construction hearing that "operatively mounted" simply means "mounted to operate."

The term "operatively mounted" appears in independent claim 17, reproduced in relevant part below:

> [claim 17]    moving a control line holding assembly from a staging position to a clamping position, wherein the control line holding assembly is **operatively mounted** proximate a floor of a rig with a **mounting assembly**;

(emphasis added). In particular, the control line holding assembly is "operatively mounted" proximate to the floor of a rig with a "mounting assembly."

The specification has numerous references to the "mounting" term. For example, in a discussion of the prior art, the specification mentions that a prior art device must telescope from its out of the way "mounting" location to the well center. Col. 2, ll. 24-26. The specification further states that the guide boom has a pair of rollers "mounted" therein, that the clamp boom may be "mounted" substantially parallel to the guide boom, that a proximity sensor may be "mounted" in the control line holding assembly, that a clamp boom may be "mounted" between the first and second booms and the guide boom, and that the overall assembly can be "mounted" at various locations relative to the rig structure. *See, e.g.*, col. 3, l. 65; col. 4, l. 16; col. 5, l. 49; col. 6, l. 31; col. 8, ll. 7-13. Of particular relevance to the current dispute and that portion of the specification the Plaintiff relies upon, the specification mentions that a "guide boom 200 is mounted on a base 210 or mounting assembly at a pivot point 205," and that by using a "fixing means," the base is "fixed" relative to the table, thereby permitting the guide boom to be "fixed"

relative to the tubular string and that preferably the guide boom is "fixed" relatively proximate to the tubular string or well center. *See, e.g.*, col. 3, ll. 39-53.

The Court finds that the terms "operative" and "mounted" as used in the specification and claims have no other meaning other than their plain and ordinary meanings. Nothing in the claim language or specification suggests a different meaning than these well understood meanings. For example, the specification never states that "mounted" has to be "fixed." While a base (or mounting assembly) may be fixed to the platform table, nothing inherent in the "mounting" term itself requires the base to be necessarily "fixed." Indeed, on its face (which is supported by the specification) the "fixing means" is narrower than the broad "operatively mounted" term. In other words, while "fixed" may be one example of "operatively mounted," there are other potential embodiments of "operatively mounted" that may not necessarily be "fixed."

The Court rejects Plaintiff's construction. While the Plaintiff's construction (at best) may be consistent with portions of the specification, the Court is not convinced that the broad "mounting" term is limited to "fixed" as suggested by the Plaintiff. The Federal Circuit has consistently held that "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water,* 381 F.3d at 1117. Even where a patent describes only a single embodiment, absent a "clear intention to limit the claim scope," it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification. *Id.*; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing numerous cases rejecting the contention that the claims of the patent must be construed as being limited to the single embodiment disclosed and stating that claims are to be given their broadest meaning unless there is a clear disclaimer or disavowal); *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1988) ("Although the specification may aid

the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."); *Phillips*, 415 F.3d at 1323.

Regarding the claim language, the claim recites "operatively mounted." The term uses "mounted" – it does not recite "connected," nor does it recite "fixed." Nothing in the claim language requires the "fixed" limitation as proposed by Plaintiff. Had the patentee wanted to limit the claim to a "fixing means" or require the mounting assembly to otherwise be "fixed" to the rig, then it could have easily done so as it did in the specification. Still further, Plaintiff's construction provides no meaning to the "operative" word within the disputed term.

 The term "operatively mounted" effectively means "mounted to operate," and the Court finds that the most appropriate construction for this phrase is "attached to operate." This construction is consistent with the plain meaning of the "mounted" term and the intrinsic record. The level or degree of attachment for this term is more than simply connecting or touching (as proposed by Defendant) but need not rise to a level of fixed or permanent (as proposed by Plaintiff).

The Court hereby construes the term "**operatively mounted**" to mean "**attached to operate.**"


### E.  "a remotely controllable head"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "a control line holding assembly that is operated through a remote control console" | "telescoping boom" |

The disputed term a "remotely controllable head" appears in claims 34 and 35 of the '637 Patent.

### (1) The Parties' Positions

Plaintiff argues that the claim language and specification supports its proposed construction. *See, e.g.*, Dkt. No. 37, Plaintiff's Opening Claim Construction Brief, at pages 16-19. Plaintiff focuses on the description related to Fig. 1, and argues that the head is the control line holding assembly. *Id.* Plaintiff argues that dependent claim 35 makes it clear that the "head" is distinct from the arm or guide boom that attaches to the rig floor. *Id.* at 17. Plaintiff argues that the specification describes a guide boom or arm that is made of a telescopic member of an upper and lower boom, and that it is clear that the "head" is on top of the boom. *Id.* at 17-18. Plaintiff argues that Defendant's construction relies on a parenthetical as a definitional statement but that such a statement is not a clearly expressed intent to redefine the term. *Id.* at 18. Plaintiff argues that the specification never used the "i.e." or similar statement, indicating that no definition was intended by the passage relied upon by the Defendant. *Id.* The Plaintiff argues that the relevant specification passage indicates that the head attached to each of the booms is moved into alignment with the tubular string, not that the head is the boom. *Id.* at 18-19. Plaintiff also argues that even if the "head" is a "boom," that the term should not be limited to "telescoping." *Id.* at 19.

Defendant argues that Plaintiff's construction is a wholesale rewrite of the claim limitation. *See, e.g.*, Dkt. No. 38, Defendant's Responsive Claim Construction Brief, at pages 8-9. Defendant argues that, absent the sole reference to "head" in the specification, there is no other identification or meaning provided to "head" and there is no plain and ordinary meaning of the term that would provide clear notice to what is claimed. *Id.* at 9. Defendant argues that the term is either invalid or should be given the special definition provided for it in the specification. *Id.* Further, Defendant

argues that a boom is not simply a fixed length arm or rod, but is a device that can be telescopically extended or retracted. *Id.*

In its Reply, Plaintiff argues that two claims with different terms can define the same subject matter. *See, e.g.*, Dkt. No. 39, Plaintiff's Reply Claim Construction Brief, at pages 9-10. Plaintiff argues that, contrary to Defendant's arguments, the cited passage is not a special definition and the "head" term is clear based on the specification. *Id.*

### (2) Analysis

Both parties provide competing constructions for this term. Thus, both parties agree that the term does not have a plain and ordinary meaning.

The term "remotely controllable head" appears in claims 34 and 35 of the '637 Patent. These claims are recited below:

> [claim 34] A method of aligning a control line with a tubular, comprising:
>
> positioning a control line using a **remotely controllable head**;
>
> determining a position of the **head**, wherein the position of the **head** aligns a first portion of the control line with a tubular string;
>
> memorizing the position of the **head**; and
>
> positioning a second portion of the control line using the memorized position.
>
> [claim 35]     The method of claim 34, wherein the **remotely controllable head** is attached to a rig floor by an arm that extends at an angle relative to the rig floor.

(emphasis added). It is clear that the recited "head" limitations are referring to the previously recited "remotely controllable head" limitation in the claim. On its face, independent claim 34 is straightforward and easily understood. A control line is positioned using a remotely controllable head. The step further includes determining a position of the head and memorizing the position of

the head.  Claim 35 provides an additional limitation that the head is attached to a rig floor by an "arm."  The term "head" is not used elsewhere in the claims.  Instead, independent claims 1 and 17 recite a "control line holding assembly."

The specification clearly indicates that the guide boom 200 and/or clamp boom 250 may be an arm.  *See, e.g.*, col. 3, ll. 39-41; col. 4, ll. 13-15.  The specification also clearly indicates that guide 220 may be a control line holding assembly disposed at an upper end of the guide boom.  *See, e.g.*, col. 3, ll. 63-65.  Consistent with independent claim 34, the specification provides a section on positioning the booms (heads) and memorizing the position of the booms and using the memorized positions.  *See, e.g.*, col. 7, l. 16 – col. 8, l. 23.  There is a single reference to "head" in the specification, which serves as the source of contention between the parties as to this term: "In operation, **the booms (remotely controllable heads)** are moved in an arcuate motion bringing the control line into close contact and alignment with the tubular string."  (emphasis added)(col. 7, ll. 16-18).  Defendant argues that this phrase is a definitional and/or limiting statement, and Plaintiff effectively argues that it is either not relevant and/or should be interpreted as meaning the "head" is only a top portion of the boom.

As mentioned above, independent claim 34 is a method that includes positioning a control line using a remotely controllable head, determining a position of the head, memorizing the position of the head, and positioning the control line using the memorized position of the head.  A focus of the claim is the "memorizing" limitation.  The only portion of the specification that mentions a "memorized" position or "memorizing" feature is found at col. 7, l. 16 – col. 8, l. 23.  This section never mentions a "control line holding assembly."  Instead, this section repeatedly mentions "booms."  Tellingly, this section is also the only reference in the specification to the term "head."  And the specification appears to equate "booms" with "remotely controllable heads."  *See,*

*e.g.*, col. 7, ll. 16-18. Contrary to the Plaintiff's arguments, the Court cannot ignore this portion of the specification.

While the Court is sensitive to Plaintiff's arguments and should, in general, be careful of finding definitional statements absent a clear intent, overall the Court is persuaded by Defendant's arguments and the intrinsic record. The Court notes that the disputed specification reference is not a mere parenthetical in isolation by itself without any relevance to the claims. The only independent claim referring to a "memorizing" feature also recites a "head" limitation. Similarly, the only portion of the specification that refers to a "head" is also the only section of the specification that discusses the "memorizing" feature. In this section, the patentee references "booms" as "remotely controllable heads." There is no "for example," "e.g.," or similar exemplary language. While the patentee did not use the words "i.e.," the phrase "the booms (remotely controllable heads)" nonetheless equates "booms" with "remotely controllable heads." The Court must give effect to the patentee's choice of words. The Court rejects Plaintiff's arguments that the cited language merely indicates that a portion of the boom (such as an upper portion) is the head, or that the parenthetical has no relevance whatsoever. The specification does not indicate or suggest Plaintiff's position, nor does it include language stating that a head is a part of the boom or is attached to the boom or is located on an upper section of the boom. Further, the fact that the specification mentions that the booms can be remotely controlled through a remote control console (col 6, l. 64 – col. 7, l. 9) affirms the Court's construction that the claimed "head" is a "boom."

The claim language supports the Court's construction. Independent claims 1 and 17 clearly recite "control line holding assembly" and not a "head," while independent claim 34 clearly recites "head" and does not mention a "control line holding assembly." The patentee clearly used different terms in the claims. The Court must place some meaning to these different terms. The use of

different terms reflects an intent by the patentee to differentiate "head" and "control line holding assembly." This is confirmed by the use of the "head" term in a portion of the specification that is consistent with the claim limitations and scope of independent claim 34.

Thus, on balance, based on the claims and the specification, the Court finds that the term "head" in claim 34 is meant by the patentee to be a "boom." This construction is the most appropriate construction based on the intrinsic record. The Court rejects Plaintiff's arguments to the contrary, and in particular that the claimed "head" must necessarily mean a "control line holding assembly." Further, the Court is not persuaded by Plaintiff's arguments regarding dependent claim 35.

Because the specification equates "boom" to a "remotely controllable head," the Court finds no need to separately construe "remotely controllable" for this claim term. It is clear from the claims and specification that the boom is remotely controllable, whether through a remote control console or otherwise. Further, there appears to be no dispute between the parties that the simple phrase "remotely controllable" means to be "controlled remotely."

Finally, the Court rejects Defendant's inclusion of the term "telescoping." While the specification has numerous references that the boom may be telescoping and/or otherwise extendable or retractable, the Court is not convinced that all booms must necessarily be telescoping. The Federal Circuit has consistently held that "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water,* 381 F.3d at 1117. Even where a patent describes only a single embodiment, absent a "clear intention to limit the claim scope," it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification. *Id*.; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing numerous cases rejecting the contention

that the claims of the patent must be construed as being limited to the single embodiment disclosed and stating that claims are to be given their broadest meaning unless there is a clear disclaimer or disavowal); *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1988) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."); *Phillips*, 415 F.3d at 1323.

The Court hereby construes "**remotely controllable head**" to mean a "**boom**."

### F. "memorizing the position of the head"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "recording the sensed level of extension of the head" | Indefinite.<br><br>Alternatively, "storing data representing the position of the head in space" |

The disputed term "memorizing the position of the head" appears in claim 34 of the '637 Patent.

### (1) The Parties' Positions

Plaintiff argues that its construction is consistent with the intrinsic record and that Defendant's construction improperly excludes a preferred embodiment. *See, e.g.*, Dkt. No. 37, Plaintiff's Opening Claim Construction Brief, at pages 12-13. Plaintiff argues that the specification describes using a linear transducer to create a signal indicative of the extension of the fluid cylinders, which determines the position of the head. *Id.* Plaintiff argues that its construction is consistent with the specification. *Id.* Plaintiff further argues that Defendant's construction is divorced from the specification and excludes a preferred embodiment. *Id.* at 13.

Defendant argues that the term is indefinite because the term "head" does not identify the scope of the invention with reasonable certainty. *See, e.g.*, Dkt. No. 38, Defendant's Responsive Claim Construction Brief, at page 9. Defendant argues that the specification clearly contemplates the use of a computer (as opposed to a human) to perform the claimed memorizing method, and thus memorizing can only refer to the storing of data representing the position of the head. *Id.* at 9-10.

In its Reply, Plaintiff argues that Defendant does not defend its use of the "in space" phrase. *See, e.g.*, Dkt. No. 39, Plaintiff's Reply Claim Construction Brief, at page 10. Plaintiff argues that its construction is correct because it tracks the language of the specification. *Id.*

### (2) Analysis

A primary dispute as to this term is whether it is indefinite. Plaintiff provides a construction for the term, while Defendant argues that it is indefinite or in the alternative provides a competing construction to Plaintiff's construction. As to the actual meaning of the term, the main dispute between the parties is the constituent term "memorizing" within the disputed phrase. It does not appear that there is a genuine dispute as to the term "position," as other references to "position" within claim 34 are not disputed and/or otherwise agreed to by the parties to have their plain and ordinary meaning.

The phrase "memorizing the position of the head" appears in claim 34 of the '637 Patent. This claim is recited below:

> A method of aligning a control line with a tubular, comprising:
>
> positioning a control line using a remotely controllable head;
>
> determining a position of the head, wherein the position of the head aligns a first portion of the control line with a tubular string;

**memorizing the position of the head**; and

positioning a second portion of the control line using the memorized position.

(emphasis added). On its face, the claim is straightforward and easily understood. A control line is positioned using a remotely controllable head. The step further includes determining a position of the head and memorizing the position of the head. Nothing in the claims indicates a meaning to these terms other than their plain and ordinary meaning. Each of the parties' constructions is focused on the "memorizing" portion of the phrase and not the "head." In other words, the parties' dispute is not based upon the parties' separate constructions (and disputes) of the "head" term. Further, the Court notes that the parties agreed that the related phrase "determining a position of the head…" in claim 34 has its plain and ordinary meaning.

Consistent with independent claim 34, the specification provides a section on positioning the booms (heads), memorizing the position of the booms, and using the memorized positions. *See, e.g.*, col. 7, l. 16 – col. 8, l. 23. Within this section the specification has numerous references to "memorize" and a "memorized position." *See id.* There is nothing in the specification that indicates the term "memorize" has a meaning other than the plain and ordinary meaning. Further, the specification is clear that the position of the booms may be memorized electronically, mechanically, or optically. *See, e.g.*, col. 8, ll. 20-23. It is clear that the "memorized" term is very broad, and the position of the booms can be memorized a variety of ways, including with or without a computer.

The Court rejects Plaintiff's construction. While Plaintiff's construction may be consistent with portions of the specification, the Court is not convinced that the broad "memorizing" term is as limited as suggested by the Plaintiff. The Federal Circuit has consistently held that "particular

embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water,* 381 F.3d at 1117. Even where a patent describes only a single embodiment, absent a "clear intention to limit the claim scope," it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification. *Id.*; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing numerous cases rejecting the contention that the claims of the patent must be construed as being limited to the single embodiment disclosed and stating that claims are to be given their broadest meaning unless there is a clear disclaimer or disavowal); *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1988) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."); *Phillips*, 415 F.3d at 1323. Further, Plaintiff's construction appears to combine a separate "sensing" limitation and a separate physical requirement of the "head" along with the general "memorizing" limitation, which the Court is not convinced is appropriate. The relied upon portion of the specification (col. 7, lines 10-15) is related more towards "sensing" and not necessarily directed to "memorizing" (nor is the term "memorize" used in that paragraph). As to the "recording" term, the term "recording" is never referenced in the specification, and it is unclear what the difference is between "recording" and "memorizing."

As to Defendant's construction, the Court rejects Defendant's indefiniteness arguments, which appear to be mostly based on its prior "head" arguments. Defendant fails to provide any evidence that one of skill in the art would not understand the scope of the claim or provide any substantive argument that the claim is indefinite. As to Defendant's alternative construction, the Court finds no support for the "in space" limitation and it is unclear what is meant by this phrase. The rest of Defendant's construction effectively substitutes "storing data representing" for

"memorizing."  Like the Plaintiff's "recording …" limitation, the Court is not convinced that the broad "memorizing" term is as limited as suggested by the Defendant.

Overall, the Court finds that the broad "memorizing" term is not as limited to a "recording…" step as proposed by Plaintiff or a "storing data …" step as suggested by Defendant. The Court finds that the memorizing term is well understood and that the intrinsic record gives no meaning other than a plain and ordinary meaning to this term.  On balance, the Court finds that both of the parties' constructions are not warranted and inject more confusion than simply a plain and ordinary meaning approach.   Because this resolves the dispute between the parties, the Court finds that no other terms within the disputed phrase requires further construction.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.") (*citing U.S. Surgical*, 103 F.3d at 1568).

The Court hereby construes "**memorizing the position of the head**" to have its **plain and ordinary meaning**.


**V.  CONCLUSION**

The Court adopts the above constructions set forth in this opinion for the disputed terms of the patent-in-suit.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered

to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby **ORDERED**, in good faith, to mediate this case with the designated mediator in this case. As a part of such mediation, each party shall appear by counsel (with lead and local counsel present and participating) and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation. Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

**So ORDERED and SIGNED this 2nd day of July, 2018.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE