# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| WEATHERFORD TECHNOLOGY HOLDINGS, LLC, WEATHERFORD U.S., L.P., <br><br> Plaintiffs, <br><br> v. <br><br> TESCO CORPORATION, TESCO CORPORATION (US), TESCO OFFSHORE SERVICES, INC., TESCO OFFSHORE SERVICES LLC, NABORS DRILLING TECHNOLOGIES USA, INC., CANRIG DRILLING TECHNOLOGY CANADA LIMITED, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:17-CV-00456-JRG |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Tesco Corporation, Tesco Corporation (US), and Tesco Offshore Services, Inc.'s (collectively, "Defendants" or "Tesco") Motion to Dismiss or Transfer Based on Improper Venue. (Dkt. No. 69.) Having considered the Motion, and for the reasons that follow, the Court finds that the Motion should be and hereby is **DENIED**.

I. **BACKGROUND**

On May 26, 2017, Plaintiffs Weatherford Technology Holdings, LLC and Weatherford U.S., L.P., (collectively, "Plaintiffs" or "Weatherford") filed suit against Tesco, alleging patent infringement of U.S. Patent No. 7,249,637 (the "'637 Patent") through the manufacture and sale of Tesco's "Pusher Arm" system (the "Pusher Arm" or "Accused Product"). (Dkt. No. 1, Complaint at 3–6.) The technology-at-issue generally relates to devices that position control lines at the surface of a well. (*Id.* at 4–5.) In its Answer, Tesco "den[ies] venue is proper within this

district in accordance with 28 U.S.C. § 1391(b) and (c) and § 1400(b)." (Dkt. No. 8, Answer ¶ 9.) Interestingly, however, and in the same document, Tesco admits that "venue is proper, though not necessarily convenient, in this District pursuant to 28 U.S.C. §§ 1391 and 1400." (*Id.* ¶ 4.)

On October 17, 2017, Tesco filed a Motion to Transfer Venue to the Southern District of Texas Under § 1404(a). (Dkt. No. 21 (hereinafter, "First Venue Motion").) Importantly, Tesco's First Venue Motion relied *solely* on § 1404(a)—Tesco raised no arguments under § 1406(a). This Court denied the First Venue Motion and found that the Southern District of Texas was not clearly more convenient. (Dkt. No. 54 at 14.) The Federal Circuit denied Tesco's mandamus petition on September 20, 2018, and found that "the district court did not clearly abuse its discretion in denying Tesco's transfer motion." *In re: Tesco Corp., Tesco Corp. (US), Tesco Offshore Servs., Inc.*, No. 2018-148, slip op. at 4 (Fed. Cir. Sept. 20, 2018).

On July 2, 2018,[1] Tesco filed a second Motion to Transfer Venue—this time under § 1406(a). (*See generally* Dkt. No. 69 (hereinafter, "Second Venue Motion").) In the Second Venue Motion, Tesco moves the Court to dismiss this case or transfer it to either the Southern District of Texas or the Western District of Louisiana. (Dkt. No. 69 at 5.)

Weatherford Technology Holdings is a Delaware corporation with its principal place of business in Houston. (Dkt. No. 1, Complaint at 1.) Weatherford U.S., L.P., is a Louisiana limited partnership with its principal place of business in Houston. (*Id.* at 1–2.) Tesco Corporation ("TC") is a Canadian corporation with its principal place of business in Houston. (Dkt. No. 8, Answer at 2.) Tesco Corporation (US) ("TCUS") is a Delaware corporation with its principal place of business in Houston. (*Id.*) Tesco Offshore Services, Inc. ("TOS") is a Nevada corporation with its principal place of business in Louisiana. (*Id.*) There is no dispute that as of the time of the

---

[1] After a change in lead counsel. (*See* Dkt Nos. 61–63, 65.)

Complaint, both parties had facilities in this District—Weatherford maintained a facility in Longview and Tesco maintained a facility in Kilgore. (Dkt. No. 21 at 3–4.)

## II.  LEGAL STANDARD

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2012); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("§ 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'" (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957))).

Under § 1400(b), a domestic corporation resides only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521. Thus, venue for a domestic corporation is proper only where the defendant either (1) is incorporated, or (2) commits acts of infringement **and** has a regular and established place of business. *Id.* at 1519.

While it was previously unclear whether § 1400(b) was controlling for foreign defendants involved in patent infringement suits, the Federal Circuit recently reaffirmed the "long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special." *In re HTC Corporation*, 889 F.3d 1349, 1361 (Fed. Cir. 2018). Thus, a foreign defendant may be sued in any judicial district under 28 U.S.C. § 1391(c)(3). *See id.* at 1357 ("[W]hile § 1400(b) governs venue in patent cases, it governs only to displace otherwise-applicable venue standards, not where there are no such standards due to the alien-venue rule.").

If venue in the district in which the case is originally filed is improper, a defendant may move to dismiss the case or transfer it to a district in which the case could have been originally brought. *Id.* The plaintiff must establish that venue in the district in which the case is originally

filed is proper. *See In re ZTE (USA), Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018) ("[U]pon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue."). However, the defendant still has the burden to establish that the proposed transferee venue is a "district in which the case could have originally been brought." *See* 28 U.S.C. § 1406(a).

A court may, in the interest of justice, transfer the case to any district or division in which the case could have been brought. 28 U.S.C. § 1406(a). This decision "rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983) (collecting cases). However, "[t]ransfer is typically considered more in the interest of justice than dismissal." *Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 936 (E.D. Tex. 2017).

### III. ANALYSIS

As the Federal Circuit recently clarified in *ZTE*, Weatherford has the burden of establishing that venue within this District is proper as to all Defendants.[2] *See In re ZTE*, 890 F.3d at 1013.

#### A. Venue is Proper as to Tesco Corporation

TC is a foreign corporation. (*See* Dkt. No. 8, Answer ¶ 3.) The fact that it may have its principal place of business in Houston, Texas does not alter its status as a foreign corporation for the purposes of § 1391(c)(3). As such, venue as to TC is proper in this District. *See In re HTC*, 889 F.3d at 1354.

---

[2] On August 1, 2018, Weatherford filed an Unopposed Motion to Join Tesco Offshore Services LLC, Nabors Drilling Technologies USA, Inc., and Canrig Drilling Technology Canada Limited as the result of a transfer of interest and merger that occurred during the pendency of this lawsuit. (Dkt. No. 92.) Because venue is determined at the date of filing, the Court need not analyze the propriety of venue as to these late-added parties. *See Galderma Laboratories, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 612 (N.D. Tex. 2017) ("The Court determines proper venue from the facts as they existed at time the Plaintiffs' Original Complaint was filed."); *accord Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1409 (Fed. Cir. 1996) ("Venue is based on the facts alleged in the well-pleaded complaint.").

4

**B. Venue is Proper as to Tesco Corporation (US) and Tesco Offshore Services, Inc.**

TCUS and TOS are domestic corporations. (Dkt. No. 8, Answer ¶¶ 4–5.) The Court notes that Tesco does not contest that its domestic entities have a regular and established place of business in this District. (Dkt. No. 69 at 4 (arguing only that Weatherford has no proof of infringing acts in this District); Dkt. No. 81 at 3–6 (same); *see also* Dkt. No. 8, Answer ¶ 6 ("The Tesco Defendants admit that TCUS has a maintenance facility at 1004 North Longview Street, Kilgore, Texas 75662.").) Moreover, Tesco admits that TOS was the primary entity that controlled operations of the Pusher Arm and that "TOS' Pusher Arm [wa]s a product within the purview of Defendant TC's ***Tubular Services Division***." (Dkt. No. 8, Answer ¶ 31 (emphasis added); *id.* ¶ 29.) Tesco further admits that TOS was "a wholly owned subsidiary of TC," and TC's Form 10-K identified the Kilgore, Texas location as a "regional operations base for the ***Tubular Services*** segment in east Texas and northern Louisiana." (*See* Dkt. No. 8, Answer ¶ 5; Dkt. No. 27-8, Ex. H at 8 (emphasis added).)[3] Based on these admissions, the Court is satisfied that TOS, at the very least, conducted some of the Pusher Arm operations out of the Kilgore office and thus, it had a regular and established place of business within this District as of the time of the Complaint. Pursuant to § 1400(b), the only issue for the Court to determine is whether Weatherford has proven that Tesco's domestic entities have committed acts of infringement in this District. *See* 28 U.S.C. § 1400 (b). It has.

Patent infringement occurs when one "makes, uses, offer to sell, or sells any patented invention . . . during the term of the patent." 35 U.S.C. §271(a). Relying on the Outer Continental Shelf Lands Act ("OCSLA"), Weatherford argues that TCUS and TOS "were involved in the

---

[3] The Court notes that briefing on the Parties' dispositive motions brings to light that Tesco has been far from forthcoming in discovery regarding their corporate structure. Compounding this problem are the transfers of interest and mergers that occurred during the pendency of this lawsuit. (*See, e.g.*, Dkt. No. 109 at 53.)

offering for sale, sale (via renting), and use of the infringing Pusher Arms on platforms in the Gulf of Mexico within 200 miles of Jefferson County (part of the Eastern District of Texas)." (Dkt. No. 74 at 9.) Tesco confirmed as much when it admitted that "Tesco has used the Pusher Arm in more than 15 completion operations in the Gulf of Mexico." (Dkt. No. 8, Answer ¶ 8.) Weatherford further alleges that TCUS and TOS performed completion work using Tesco's Pusher Arms on the Auger oil and gas platform (the "Auger Rig") and on an oil and gas rig in the High Island area of the Gulf of Mexico (the "High Island Rig"). (*Id.* (citing various Tesco emails and invoices concerning the Auger Rig); Dkt. No. 111 at 2–4; *see also* Dkt. No. 111-2, Ex. A (TOS invoice to Shell Oil Company for Auger Rig at Well Number GB 427 A-20); Dkt. No. 111-2, Ex. B (TCUS invoice to Walter Oil & Gas for Rig Number HERCULES 263 at Well Number HI A469 SS001).)

> OCSLA provides that:
>
> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State.

43 U.S.C. § 1333(a)(1). Thus, OCSLA, with minor exceptions (ships and vessels), extends federal jurisdiction to the Outer Continental Shelf to the same extent as if it were located within a state. *See id.*; *see also Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969) ("[OCSLA] makes it clear that federal law, supplemented by state law of the adjacent State, is to be applied to these artificial islands as though they were federal enclaves in an upland State. This approach was deliberately taken in lieu of treating the structures as vessels, to which admiralty law supplemented by the law of the jurisdiction of the vessel's owner would apply."); *Amber Resources Co. v. U.S.*, 538 F.3d 1358, 1362 (Fed. Cir. 2008) ("[T]he federal government has jurisdiction and control over

6

the outer continental shelf, which is defined as including all submerged land that is beyond the outer limits of state jurisdiction (ordinarily three nautical miles from shore) and within the limits of national jurisdiction (ordinarily 200 miles from shore)."); *Elbit Sys. Land v. Hughes Network Sys., LLC*, No. 2:15-cv-37-RWS-RSP, 2016 WL 3675590 at *2–3 (E.D. Tex. Mar. 30, 2016) (finding OCSLA applied to platforms located within 200 miles of Port Arthur, Texas); *Alford Safety Servs., Inc. v. Hot-Hed, Inc.*, No. 10-1319, 2014 WL 3418233, at *5 (E.D. La. Aug. 24, 2010) (finding OCSLA applied to welding habitats on oil platforms located 150 miles southeast of New Orleans, Louisiana).

Importantly, Tesco does not contest its use of the Pusher Arm on the Auger Rig or the High Island Rig. (*See generally* Dkt. Nos. 81, 112.) Nor does Tesco contest the application of OCSLA in these circumstances. (*See generally* Dkt. Nos. 81, 112); *see also Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996) ("OCSLA was intended to apply to the full range of disputes that might occur on the [Outer Continental Shelf]."); *L.C. Eldridge Sales Co. v. Azen Mfg. Pte.*, No. 6:11-cv-599, 2013 U.S. Dist. LEXIS 186151, at *4–5 (E.D. Tex. Nov. 13, 2013) ("The Patent Act is a law of the United States extended through the OCSLA.") (citing *WesternGeco, L.L.C., v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 371 (S.D. Tex. 2011)). Nor does Tesco contest, absent only its arguments under the marking statute, that these acts on the Auger Rig and the High Island Rig constitute alleged acts of infringement sufficient to meet the second prong of § 1400(b).

Instead, Tesco argues that platforms east of the jurisdictional boundary line described in *Texas v. Louisiana* are outside of this Court's jurisdiction. (Dkt. No. 81 at 4–5 (citing *Texas v. Louisiana*, 426 U.S. 465 (1976).) Tesco attaches a leasing map from the U.S. Department of Interior, Bureau of Ocean Energy Management and claims that line shown on the map is the

"jurisdictional median line between Texas and Louisiana as described in *Texas v. Louisiana*." (Dkt. No. 81 at 4–5; *see also* Dkt. No. 81-3, Ex. 3A (hereinafter, the "Leasing Map").) Tesco argues that because the Auger Rig falls east of this line, it falls outside this Court's jurisdiction for the purposes of venue. However, the Leasing Map[4] does not show the jurisdictional line described in *Texas v. Louisiana*. Rather, it shows the boundaries between the Western Gulf of Mexico, the Central Gulf of Mexico, and the Eastern Gulf of Mexico, which can be seen as the two yellow lines separating those three areas, and the boundaries for protraction blocks. *Compare* Leasing Map and Official Protraction Diagrams, both located at https://www.boem.gov/GOM-Official-Protraction-Diagrams/, *with* Dkt. No. 81-4, Ex. 3B (Tesco's extension of the boundary line). Tesco's misrepresentation of the boundary lines in the Leasing Map is not taken lightly.

Based on the language of the statute itself, the Court rejects Tesco's argument and finds this Court has jurisdiction over the Auger Rig. Tesco relies on Section 1333(a)(2)(A) of OCSLA and the Fifth Circuit's holding in *Reeves v. B&S Welding, Inc.* for the proposition that ***federal*** jurisdiction under OCSLA is constrained by state boundary lines. (Dkt. No. 81 at 4.) However, that subsection of OCSLA is concerned with the application of *state* law "to the extent that [it is] applicable and not inconsistent with this Act or other Federal laws." *See* 43 U.S.C. § 1333(a)(2)(A); *see also Bartholomew v. CNG Producing Co.*, 862 F.2d 555, 557 (5th Cir. 1989) (finding that state law applies only "if there is a gap in the federal law"). In this case, the underlying claims are patent claims, which fall exclusively under federal jurisdiction.[5] There is no question of

---

[4] Tesco requests that the Court take judicial notice of government documents attached as Exhibits 2, 3A, and 4A to its Response. (*See* Dkt. No. 81 at 5.) The Court takes judicial notice of the Leasing Maps and Official Protraction Diagrams produced by the United States Department of the Interior, Bureau of Ocean Energy Management, found at https://www.boem.gov/GOM-Official-Protraction-Diagrams/, and the High-Resolution Geophysical Survey produced by the United States Bureau of Ocean Energy Management located at https://bobson.maps.arcgis.com/apps/webappviewer/index.html?id=664fcd0d23e649d8ba8b010802adad01 (hereinafter, the "BOEM Map").

[5] To be clear, this case is brought under the Patent Act. (Dkt. No. 1, Complaint ¶ 7.) It does not arise under OCSLA. *See generally* 43 U.S.C. § 1349(b).

state law. *But see Reeves*, 897 F.2d at 179 ("Appellant endeavors to establish that the platform is adjacent to Louisiana and subject to Louisiana law in order to avail himself of a possible claim under the Louisiana 'ruin' statute."). As Weatherford points out, all areas governed by OCSLA are outside the jurisdiction of any state because OCSLA is an *extension* of jurisdiction.

Moreover, the Fifth Circuit, when faced with a boundary dispute, found that it would not be proper to "adjudicate the boundary itself" as it "would call for more evidence" and was "a matter of significant concern as to the two states themselves." *Reeves*, 897 F.2d at 180. With this guidance from the Fifth Circuit, the Court finds no need under these circumstances to determine how the boundary between Texas and Louisiana extends off the coast. The Auger Rig and the High Island Rig are "permanently or temporarily attached to the seabed" of the Outer Continental Shelf for the purpose of "exploring for, developing, or producing resources," and they are located within 200 miles of Port Arthur, Texas. (*See* Dkt. No. 74 at 10; Dkt. No. 74-5, Ex. 4.) As such, they fall within this Court's jurisdiction under Section 1331(a)(1) of OCSLA. *See Amber Res.*, 538 F.3d at 1362; *see also Elbit*, 2016 WL 3675590, at *2. That ends the inquiry.

Having determined that this Court's federal jurisdiction extends to the Auger Rig, Weatherford's evidence establishes that TOS has committed acts of infringement within this District. For example, the April 2017 email communications between Tesco's Mr. Paul Meeks and Shell's Mr. Sumeet Garg include an invitation to submit an offer for Casing Tubing Running Services (including the Pusher Arm) on the Auger Rig by May 3, 2017. (Dkt. No. 74-2, Ex. 1 (emails); Dkt. No. 74-2, Ex. 2 (Shell's Invitation to Tender with discussion of scope of work).) Moreover, a service ticket from TOS shows dates of services for Shell on the Auger Rig at Well Number Garden Banks 471 A-17 from 09/01/2015–09/30/2017, which pre-date the filing of the Complaint. (Dkt. No. 74-2, Ex. 3 at TES000836.) Subsequent invoices for Shell only confirm that

TOS continues to supply Shell with the Pusher Arm. (*See generally id.*; *see also* Dkt. No. 111-1, Ex. 1.) The Court finds that Weatherford has met is burden to establish venue is proper in this District over TOS. *See Elbit*, 2016 WL 3675590 at *2–3 (finding acts of infringement occurred within this district based on platforms within 200 miles of Port Arthur, Texas).

Likewise, Weatherford has established that TCUS has committed acts of infringement within this District on the High Island Rig. Tesco does not contest that the High Island Rig falls within this Court's jurisdiction. (*Compare* Dkt. No. 81 at 5 (discussing Auger Rig), *with* Dkt. No. 112 (discussing High Island Rig); *see also* Dkt. No. 111 at 2 (citing the BOEM Map).) The invoices establish that the Pusher Arm was used in 2014 for a "tubing installation" for Walter Oil & Gas on Rig Number HERCULES 263 at Well Number HI A469 SS001. (Dkt. No. 111-2, Ex. B.) Thus, Weatherford has met its burden under the second prong of § 1400(b) and venue over TCUS is proper in this District. *See Elbit*, 2016 WL 3675590 at *2–3.

Tesco's only response to Weatherford's evidence of acts of infringement is a misplaced reliance on the marking statute. (*See generally* Dkt. No. 112.) Tesco argues that Weatherford's failure to mark means that the alleged infringement associated with the High Island Rig "is not actionable conduct, and cannot be used to set venue." (*Id.* at 5.) However, the marking statute is a limitation on damages—it does not transform conduct that would otherwise be infringing into non-infringing conduct. *See* 35 U.S.C. § 287; *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1379 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 900 (2014) ("The marking statute provides a temporal limitation on *damages* for infringement. It does not define—nor does it redefine—acts of infringement. That task is left to 35 U.S.C. § 271(a).") (alteration in original). Thus, the marking statute does not disrupt the Court's analysis or ultimate conclusions.

### C. Whether Tesco Waived Its Venue Objection

Tesco argues that *ZTE* "gave [it] a right to file this motion asserting Weatherford's failure to meet its burden to prove infringing acts in the Eastern District." (Dkt. No. 69 at 4.) Tesco further asserts that *ZTE* was an intervening change in the law, and it "could not challenge venue with a no evidence motion [prior to *ZTE*]." (Dkt. No. 81 at 2.) As such, Tesco argues that an exception to the waiver rule applies. (*Id.*)

The Court notes that Tesco's actions throughout this litigation, including filing a previous motion to transfer under §1404(a), engaging in post-*ZTE* discovery including a physical inspection of the accused products, serving interrogatories, and engaging in claim construction, appear suspect in light of the Federal Circuit's recent discussions of non-rule-based waiver under 28 U.S.C. § 1406(b). *See In re Micron*, 875 F.3d 1091, 1100–02 (Fed. Cir. 2018); *see also Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-00980, 2017 WL 5630023, at *2–4 (E.D. Tex. Nov. 22, 2017), *mandamus denied*, *In re FedEx Corporation*, No. 2018-117, slip op. at 4–5 (Fed. Cir. Jan. 23, 2018); *see also* Dkt. No. 74 at 4–5; Dkt. No. 82 at 2. Moreover, *ZTE* did not create a new right to file a "no evidence motion"—it simply adopted a uniform venue burden to apply *once a motion was filed*, which the Federal Circuit noted "best align[ed] with the weight of historical authority among the circuits." *ZTE*, 890 F.3d at 1013. Tesco could have filed a motion asserting that Weatherford had no evidence of acts of infringement in this District prior to *ZTE*.

Notwithstanding the above, the Court need not address whether Tesco waived its venue objection or whether *ZTE* excuses such waiver, because even if Tesco's venue objection is timely, its Second Venue Motion fails on the merits, as venue is proper in this District under a strict application of § 1406(a).

## IV. CONCLUSION

For the reasons set forth above, venue as to all Defendants is proper in this District under § 1406(a). Accordingly, Defendants' Motion to Dismiss or Transfer Based on Improper Venue (Dkt. No. 74) is **DENIED**.

**So Ordered this**
**Oct 26, 2018**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE